# Hines v. Marcinik

C.P. of Allegheny County, no. GD96-2637.

*R. Bruce Carlson,* for plaintiffs.
*Leo Gerard Daly,* for defendant McKeesport Housing Authority.

WETTICK, *J.,* October 18, 1999—Plaintiffs' first amended complaint raises a section 1983 claim against McKeesport Housing Authority. The Housing Authority's preliminary objections seeking dismissal of this claim are the subject of this opinion and order of court.

Minor plaintiffs were allegedly harmed by exposure to lead-based paint while occupying leased premises owned and controlled by defendants other than the Housing Authority. The Housing Authority had no involvement with the property at the time plaintiffs entered into the lease and began occupying the premises.

Immediately prior to the tenancy of plaintiffs, the property was occupied by tenants for approximately two years under the section 8 rental program of the McKeesport Housing Authority. During the period that the property was leased under the section 8 program, the Housing Authority was obligated under federal legislation and implementing HUD regulations to inspect the premises

for hazards from lead-based paint and to insure that the hazards were eliminated as far as practicable.

Plaintiffs contend that the defective paint surfaces to which plaintiffs were exposed existed at the time the section 8 tenants occupied the premises and that these conditions would have been eliminated if the Housing Authority had properly inspected the premises while they were occupied by the section 8 tenants. Plaintiffs contend that they are intended beneficiaries of the federal requirement of mandated inspections for defective paint surfaces. Consequently, they are entitled to bring a section 1983 action based on the Housing Authority's failure to comply with these HUD regulations.

In the case of *Wilson v. Bucci,* 39 D.&C.4th 382, 147 P.L.J. 69 (1998), I ruled that violations of the Federal Lead-Based Paint Poisoning Prevention Act, the housing inspection provisions of section 8 of the United States Housing Act of 1937, 42 U.S.C. §1437f (Supp. 1998), and regulations promulgated under the authority of these two laws may be enforced through a private action for money damages brought under section 1983. In that case, the premises were occupied by plaintiffs pursuant to a section 8 lease.

In the present case, the issue raised by the Housing Authority's preliminary objections is whether plaintiffs who were not participants in the section 8 program may bring an action under section 1983 for the Housing Authority's alleged breach of its duty to inspect that occurred while the premises were part of the section 8 program.

In *Wilson,* I followed case law which held that section 8 tenants may bring a section 1983 action because the

following criteria is met: Section 8 tenants are the intended beneficiaries of the legislation and implementing regulations. The legislation and implementing regulations impose requirements that are sufficiently specific to be within the competence of the judiciary to enforce. The legislation and implementing regulations create mandatory directives. There is not an explicit provision within the legislation forbidding recourse to section 1983. A private cause of action is not inconsistent with the regulatory scheme.

When I apply this criteria to the present case, I reach the same result. The only prong that may be different is whether tenants who do not occupy the premises pursuant to a section 8 lease are intended beneficiaries of the legislation and the implementing regulations.

As to this issue, I find to be persuasive the ruling of the Court of Appeals for the Third Circuit in *Davis v. Philadelphia Housing Authority*, 121 F.3d 92 (3d Cir. 1997). In that case, the Third Circuit addressed the same issue.

"These facts present us with the central question we must address: whether successor tenants, who move into an apartment that is no longer part of a federal housing program yet are injured as the result of an alleged breach of duty that occurred while the apartment was part of the program, are arguably within the class of persons that congress intended to benefit under the federal statute at issue. Put another way, are the Davis's rights arguably within the 'zone of interests' intended to be protected by congress under the Lead Act?" *Id.* at 95. (footnote omitted)

The court held that successor tenants are beneficiaries of the legislation because the legislative history of the Lead Paint Act focused on the need for the permanent removal of lead-based paint hazards. The goal of the legislation was to ensure that children were not constantly exposed and re-exposed to harms associated with lead-based paint poisoning. The court said that two of the primary purposes of the Lead Paint Act are to permanently eliminate lead-based paint hazards from the nation's housing and to protect America's children from lead-based paint poisoning. Consequently, there was a close correlation between the interests of the successor tenants and the purposes intended to be served by the statutory provisions. *Id.* at 99-101.

The Housing Authority argues that the *Davis* opinion does not advance plaintiffs' position. It relies upon the following language:

"When the question is whether any plaintiffs are entitled to relief under a statute which does not expressly provide the relief which is sought, the question is properly framed as whether a cause of action can be implied. The court must in that case decide whether a newly-fashioned remedial structure should be made available to a class of litigants not expressly entitled to relief under the statute.

"In contrast, when there already exists a cause of action prescribing a particular remedy for a defined class of persons and the question is simply whether a particular plaintiff is also entitled to that relief, the question is properly addressed as one of standing. In such a case, the inquiry focuses on whether the plaintiff is the proper person to press the claim.

"*Id.* [*Bowman v. Wilson,* 672 F.2d 1145,] at 1151 n.10 [(3d Cir. 1982)]. (citations omitted) In the present action, the district court dismissed the Davis's claim against the Housing Authority solely on its conclusion that the Davises did not have standing because their interests 'are not consistent with the purposes implicit in the statute at issue.' *Davis,* 1996 WL 377189, at *3 [(E.D. Pa. July 3, 1996)]. Accordingly, we need not reach the separate question of whether the Lead Act provides the Davises, as successor tenants, with a cause of action against the Housing Authority for its alleged breach of duties." *Davis,* 121 F.3d at 94-95.

While I have some difficulty understanding this quoted section, I believe that the court is saying that because the lower court dismissed the case solely because of a lack of standing, it is not deciding whether any tenants, including section 8 tenants, may bring a lawsuit to recover damages under section 1983. It is only deciding whether or not a successor tenant is prevented from raising the section 1983 causes of action that a section 8 tenant may be permitted to raise.

Furthermore, even if the *Davis* case is addressing a narrower issue, I find to be persuasive the conclusions of the court that Congress intended that lead-based hazards be permanently removed in that period of time during which the property was part of a federally-funded housing program. Consequently, there is a close correlation between the interests of the successor tenants and the purposes to be served by the legislation and accompanying regulations referred to in my *Wilson* opinion. Consequently, I am extending the *Wilson* ruling to successor tenants injured as a result of breaches of duty that

occurred while their leased premises were part of the section 8 program.

For these reasons, I enter the following order of court:

## ORDER

On October 18, 1999, it is hereby ordered that the preliminary objections of the McKeesport Housing Authority are overruled.